UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY and STATE FARM FIRE
AND CASUALTY COMPANY,

       Plaintiffs,

v.                                    Case No: 6:24-cv-379-JSS-EJK

COMPLETE CARE CENTERS, LLC,

       Defendant.
_____/

## ORDER

Defendant, Complete Care Centers, LLC, moves to dismiss the Complaint (Dkt. 1) filed by Plaintiffs, State Farm Mutual Automobile Insurance Company (State Farm Auto) and State Farm Fire and Casualty Company (State Farm Fire), for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), (Motion, Dkt. 22). Defendant moves in the alternative to abate or stay this action pending the outcome of a related state-court proceeding. (*Id.*) Upon consideration, for the reasons outlined below, the Motion is denied.

## BACKGROUND

On July 10, 2020, Plaintiffs sued Defendant and its owners, Marc Ott and Bret Scheuplein, for allegedly orchestrating a fraudulent scheme to obtain insurance

payments through unlawful self-referrals.  (The "Settled Action," Dkt. 1 ¶¶ 1–4; Dkt. 1-3.)  This scheme purportedly involved violations of section 817.234(7)(a), Florida Statute, which prohibits medical providers from "engag[ing] in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge."  (Dkt. 1 ¶ 3 (quoting the statute).)  The day before trial was set to commence, Defendant offered to settle the matter.  (*Id.* ¶ 5; Dkt. 1-4 at 3.)  Plaintiffs rejected Defendant's offer and made a counteroffer in which they demanded, among other things, "[a] waiver of Complete Care's AR [accounts receivable], including the withdrawal of all demands and CRNs and the dismissal of all pending PIP suits with each party to bear their own costs/fees."  (The "Waiver Provision," Dkt. 1 ¶ 6; Dkt. 1-4 at 2.)  According to Defendant, a CRN is the "Civil Remedy Notice of Insurer Violation that must be filed with the Florida Department of Financial Services as a condition precedent to bringing a bad faith claim against an insurance company for failure to pay insurance benefits," (Dkt. 22-4 at 3 n.2 (citing § 624.155, Fla. Stat.)), and a PIP suit is a personal injury protection claim "against an automobile insurance company when an insured (or the insured's assignee, pursuant to an assignment of insurance benefits) sues an insurer for failing to pay first-party insurance benefits," (Dkt. 22-4 at 3 n.2 (citing § 627.736, Fla. Stat.)).

During the first day of trial, the court presiding over the Settled Action ruled that Florida law generally prohibits medical providers from "waiv[ing] the collection

of copayments or defer[ring] the collection of copayments." (Dkt. 1 ¶ 7; Dkt. 1-5 at 20.) That evening, Defendant's attorney e-mailed Plaintiffs' counsel, accepting the counteroffer, including the Waiver Provision. (Dkt 1 ¶ 7; Dkt. 1-4 at 2 ("We accept your counter. Do you want to do the first draft or us?").) The parties informed the court of this settlement agreement the following day but expressed disagreement as to its terms. (Dkt. 1-6 at 3–15.) Specifically, the parties disagreed as to the scope of the Waiver Provision. (*Id.* at 5.) On January 18, 2023, the court, finding that the case had been settled, dismissed it with prejudice. *State Farm Mut. Auto. Ins. Co. v. Complete Care Ctrs., LLC*, No. 6:20-cv-1240-WWB-EJK (M.D. Fla.), Dkt. 486 at 2. On February 16, 2023, Defendant moved to enforce the settlement agreement, arguing that the Waiver Provision was "limited to first-party claims brought against and owed by [Plaintiffs]," and that neither "party intended to extinguish the debts of third[]parties through their negotiated settlement of this action." *Id.*, Dkt. 490 at 11. Plaintiffs did not disagree:

> Plaintiffs advised Defendants [that] . . . "Plaintiffs are not intending to preclude [Defendant] from seeking to collect from a non-State Farm, third-party insurance company" and that [Plaintiffs] did not intend for third-party insurance companies to "receive the benefit of our settlement." Plaintiffs[ maintained that their] position ha[d] always been [that] the Waiver Provision requires a waiver of [Defendant]'s AR . . . meaning all bills generated by [Defendant] for services rendered to Plaintiffs' insureds.

*Id.*, Dkt. 494 at 3. The court denied Defendant's motion and held that the "underlying substantive claims in th[e] litigation ha[d] been resolved by a binding settlement." *Id.*, Dkt. 504 at 2.

On October 16, 2023, Defendant brought suit in state court against State Farm Auto, Acacia Jennings, and Richard Gregory, seeking a declaratory judgment that "the Waiver Provision is limited to amounts owed directly by State Farm and does not include 'Patient Payment Obligations' allegedly owed" by Ms. Jennings, a State Farm insured, or Mr. Gregory, who was not insured by State Farm.  (The "State Action," Dkt. 22-4 at 4.)  It subsequently amended its complaint to add I. Wai Lei, also a State Farm insured, as a defendant.  (Dkt. 22-1 at 11.)  Defendant argues that the Waiver Provision "must be properly construed . . . to constitute a waiver only of the Insurer Reimbursable Charges (i.e., the only amounts ever owed by State Farm) that existed as of January 17, 2023."  (Dkt. 22-1 at 29.)  Defendant defined these charges as "unpaid bills for PIP and MPC [medical payments coverage] benefits that [Defendant] submitted to [State Farm Auto] for reimbursement pursuant to assignments of State Farm's insureds' PIP and MPC benefits."  (*Id.* at 25.)

Plaintiffs removed the State Action to federal court on the basis of diversity jurisdiction, arguing that "[t]he Waiver Provision[, which] . . . provides for a full waiver of [Defendant]'s accounts receivable for services rendered to State Farm Mutual's insureds," was subject to no limitation, and "thus, includes all first-party lines of coverage[] offered by State Farm Mutual, including PIP, MPC [medical payments coverage], and uninsured/underinsured motor vehicle [UM] coverage, as well as any amounts individually owed by State Farm Mutual's insureds."  *Complete Care Ctrs., LLC v. State Farm Mut. Auto. Ins. Co.*, No. 8:23-cv-2385-WFJ-TGW (M.D. Fla. 2023), Dkt. 1 ¶ 80 (the "Removal Action").  Defendant moved to remand back to

state court, contending that there was not complete diversity among the parties.  (Dkt. 22-4 at 4, 6.)  The court agreed with Defendant and remanded the State Action.  (*Id.* at 8.)

Plaintiffs filed their Complaint before this court on February 22, 2024.  (The "Federal Action," Dkt. 1.)  Plaintiffs claim that Defendant has failed to honor the settlement agreement.  (*Id.* ¶ 9.)  Specifically, they assert that "[Defendant] materially breached the Settlement Agreement by failing to dismiss all PIP lawsuits pending as of January 17, 2023," and that "[c]onsequently, there are at least 366 PIP lawsuits currently pending in contravention of the Settlement Agreement." (*Id.* ¶ 10.)  In other words, Plaintiffs assert that Defendant has failed to abide by the Waiver Provision. (*Id.*)  Accordingly, Plaintiffs seek specific performance of the Waiver Provision in the form of an order directing Defendant to dismiss its PIP lawsuits that remain pending (Count I), and a declaratory judgment that the Waiver Provision "requires [Defendant] to waive its legal accounts receivable, which includes charges held under a letter of protection . . . for all services rendered to [Plaintiffs'] insureds on or before January 17, 2023," including both "amounts claimed as to the . . . Plaintiffs and amounts claimed from State Farm insureds." (Count II).  (*Id.* ¶ 11.)  Defendant now moves to dismiss arguing that the court lacks subject-matter jurisdiction and the counts fail to state a claim.  (Dkt. 22.)  Plaintiffs oppose the Motion.  (Dkt. 27.)

## APPLICABLE STANDARDS

"Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  The party seeking to invoke the court's jurisdiction

"has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085–86 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(1); *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002)).  If a court lacks jurisdiction, its "only remaining function is to announce that [it] lack[s] jurisdiction and dismiss the cause." *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299, 1301 (11th Cir. 2022) (citing *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)).  To establish diversity jurisdiction, a plaintiff must sufficiently plead complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (quoting *Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)).  To satisfy the amount-in-controversy requirement, the value of injunctive, declaratory, and other forms of equitable relief must be "sufficiently measurable and certain," not "too speculative and immeasurable." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (quotations omitted).

"[S]tanding is a necessary component of [a federal court's] jurisdiction to hear 'cases' and 'controversies' under Article III of the Constitution . . . ." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1190 (11th Cir. 2009) (citing *Ouachita Watch League v. Jacobs,* 463 F.3d 1163, 1169 (11th Cir. 2006)); *see also Common*

*Cause/Ga. v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009) ("Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.") (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)). "The party invoking federal jurisdiction bears the burden of establishing" the constitutional requirements for standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing to maintain its claims, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [it is] 'presum[ed] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *accord Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1081 (11th Cir. 2002) ("[A]t this stage the [plaintiff] is only required to generally allege a redressable injury caused by the actions of [defendant] about which it complains.").

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

The court first determines whether Plaintiffs have established the amount-in-controversy requirement and standing, and then discusses whether abstention is justified in this case. The court concludes by addressing Defendant's arguments that the court lacks jurisdiction over this case as a PIP suit and that the doctrine of judicial estoppel bars Plaintiffs' arguments.

### A. Amount in Controversy

Defendant maintains that dismissal is "warranted because Plaintiffs failed to satisfy the amount[-]in[-]controversy" requirement. (Dkt. 22 at 10–16.) "In order to invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000." *McKinnon Motors*, 329 F.3d at 807 (citing 28 U.S.C. § 1332). "Ordinarily, a plaintiff need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018). "The plaintiff's good-faith pleading will be second guessed only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* (alteration in original) (quoting

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "However, when the plaintiff pleads an unspecified amount of damages, it bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the jurisdictional minimum." *Id.* Application of this preponderance standard does not depend upon the type of relief sought but rather upon "the specificity with which the plaintiff pleads the amount in controversy." *Id.* at 1342 n.5. Ultimately, this court will have jurisdiction over Plaintiffs' claims "[i]f the jurisdictional amount is . . . stated clearly on the face of the documents before the court, or readily deducible from them." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007).

In Count I, Plaintiffs seek the dismissal of all of Defendant's "PIP lawsuits filed against [Plaintiffs] that were pending as of January 17, 2023, with each party to bear their own costs and attorney[] fees." (Dkt. 1 ¶ 39.) The court finds that these damages are indeterminate such that Plaintiffs are held to the preponderance standard. *See Fastcase, Inc.*, 907 F.3d at 1342 n.5 (noting that the preponderance standard applies to "claims involving unspecified or indeterminate damages").

Based on Defendant's filings, the dismissal that Plaintiffs seek appears to involve at least 366 PIP lawsuits. (Dkt. 55-1.) Defendant valued the dismissal at $1 million based on its own "conservative estimate" that Plaintiffs would avoid $5,000 in attorney fees per dismissed case. (Dkt. 1-4 at 3.) Defendant's estimate appears to have been premised, at least in part, on section 627.428, Florida Statute, which at one time entitled a prevailing plaintiff to an award of attorney fees but has since been repealed. *See State Farm Mut. Auto. Ins. Co. v. At Home Auto Glass LLC*, No. 8:21-cv-239-TPB-

AEP, 2024 WL 4349246, at *1 (M.D. Fla. Sept. 30, 2024) ("[Section] 627.428, . . . which provided for 'one way' attorney fees in favor of prevailing plaintiffs, was repealed."). Nevertheless, the costs of defending these suits if not dismissed will be substantial, and Plaintiffs are entitled to have these costs considered in assessing whether the jurisdictional amount has been satisfied. *See Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) ("The pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount . . . .").

The value of the dismissal of the suits is supported by the demand letters that Plaintiffs received in nineteen of the PIP suits, a "composite of exemplar pre-suit demand letters" that "collectively seek $96,604 from . . . Plaintiffs." (Dkt. 27 at 8, 8 n.9; Dkt. 27-2 at 2–39.) Admittedly, "[i]f [a] demand letter is mere puffery or an attempt at posturing, it is insufficient to prove by a preponderance of the evidence that the amount in controversy meets or exceeds $75,000." *Disparti v. State Farm Mut. Auto. Ins. Co.*, No. 8:17-cv-82-T-33TGW, 2017 WL 117313, at *1 (M.D. Fla. Jan. 12, 2017) (quotation omitted). A demand letter constitutes such puffery or posturing when it is "devoid of facts enabling the receiver to evaluate the claim." *Chiu v. Terminix Co. Int'l, L.P.*, No. 8:16-cv-306-T-24-JSS, 2016 WL 1445089, at *2 (M.D. Fla. Apr. 13, 2016) (quoting *Mick v. De Vilbiss Air Power Co.*, No. 6:10-cv-1390-Orl-28GJK, 2010 WL 5140849, at *2 (M.D. Fla. Dec. 14, 2010)). Here, however, the figures included in the exemplar demand letters represent costs for medical care already provided, interest on those sums, and penalties provided for under law, rather than mere estimates or

puffery. (*See* Dkt. 27-2 at 2–39.) Further, they represent Plaintiffs' liability in only five percent of the PIP suits at issue here. Thus, the court finds that, even held to the preponderance standard, Plaintiffs have satisfied the amount-in-controversy requirement. *See Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 6632629, at \*5 (S.D. Fla. Nov. 14, 2014) (finding that the plaintiff met the "preponderance" test because the "[p]laintiff state[d] a set of claims which, read broadly but plausibly, c[ould] command $75,000 or more in damages").

Defendant's argument, that Plaintiffs are not permitted to "cobble together and aggregate separate amounts in controversy to 'procedurally fence' individual state court PIP suits," is unavailing. (Dkt. 22 at 12.) The cases Defendant cites are inapposite. *See, e.g.*, *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005) (discussing abstention under the *Brillhart-Wilton* doctrine); *Path Med., LLC v. Geico Indem. Co.*, No. 18-cv-60886-UU, 2018 U.S. Dist. LEXIS 68767, at \*2 (S.D. Fla. Apr. 23, 2018) (remanding case where the "[d]efendant provide[d] no evidence that the amount in controversy exceed[ed] $75,000," and noting that the defendant's argument "that the amount-in-controversy [requirement] must be satisfied . . . because [the p]laintiff s[ought] attorney fees and punitive damages" was "pure speculation"); *Path Med., LLC v. Geico Indem. Co.*, No. 18-CV-60759-ALTONAGA/Seltzer, 2018 WL 7098939, at \*3 (S.D. Fla. June 21, 2018) ("Defendant's attempt to inflate the amount in controversy in this case with damages sought *in a separate case* is novel and fails.") (emphasis added).

Moreover, Plaintiffs also seek declaratory relief that, if granted, would require Defendant to waive its "legal [accounts receivable]," which Plaintiffs allege in their Complaint would require the waiver of "more than $1.3 million" worth of medical bills submitted by Defendant across 125 claims.  (Dkt. 1 ¶¶ 35, 46.)  *See Weaver v. Travelers Indem. Co.*, No. 3:09-cv-1014-J-34JRK, 2010 WL 11507345, at *2 (M.D. Fla. Mar. 1, 2010) ("[W]here the plaintiff seeks declaratory relief, the amount in controversy is the value to [the] plaintiff of the object of the litigation.").  The amount of the medical bills is separate from the costs that Plaintiffs stand to avoid in reviewing and defending the claims.  (Dkt. 1 ¶¶ 22–35.)  *See Allstate Ins. Co. v. Auto Glass Am., LLC*, No. 6:18-cv-2184-Orl-41LRH, 2020 WL 6064607, at *3 (M.D. Fla. July 13, 2020) ("A plaintiff's potential liability may be considered in calculating the amount in controversy.").

"Although [the p]laintiff bears the burden of establishing the amount-in-controversy requirement, this burden is not onerous.  It merely requires that [the p]laintiff convince this [c]ourt that it is more likely than not that the pleading satisfies the jurisdictional minimum."  *Co. Prop. & Cas. Ins. Co. v. Metal Roofing Sys.*, No. 13-60659-CIV, 2013 WL 5770730, at *3 (S.D. Fla. Oct. 24, 2013).  The court is convinced that the relief Plaintiffs seek across both counts is sufficient to support the court's jurisdiction over this case.  Exercising its ability to make reasonable deductions and inferences, the court concludes that Plaintiffs have made a sufficient showing that the amount in controversy in this case exceeds $75,000.  *See Payne v. J.B. Hunt Transp., Inc.*, 154 F. Supp. 3d 1310, 1313 (M.D. Fla. Jan. 4, 2016) ("[D]istrict courts are

permitted to make reasonable deductions and reasonable inferences, and need not suspend reality or shelve common sense in determining whether the face of the complaint . . . establishes the jurisdictional amount.") (ellipsis in original) (internal quotation marks omitted) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 770 (11th Cir. 2010)).

### B. Standing

Defendant contends that Plaintiffs have not suffered an injury-in-fact, and thus, that they have failed to establish standing to support their claims.  (Dkt. 22 at 16–18.)  The court disagrees.

"[A] plaintiff must establish standing for each type of relief sought," *Tokyo Gwinnett, LLC v. Gwinnett County*, 940 F.3d 1254, 1262 (11th Cir. 2019), because "[t]he allegations necessary to establish standing depend on the type of relief sought." *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021).  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1179 (11th Cir. 2019) (quotation omitted).  The Eleventh Circuit "has acknowledged the plaintiff's need to show the likelihood of injury as a prerequisite for standing to obtain equitable relief," *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991), such as specific performance of a contractual obligation, *see Blue Cross & Blue*

*Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 n.5 ("Specific performance is an equitable remedy available when legal remedies are inadequate.").

### 1. Count I—Specific Performance

Defendant argues that Plaintiffs' claim for specific performance of the Waiver Provision, in which Plaintiffs seek an order requiring Defendant to "dismiss its PIP litigation that was pending as of January 17, 2023[,] with prejudice, with each party to bear their own costs and attorney[] fees," (Dkt. 1 ¶ 43), fails for want of an injury in fact because Defendant has "voluntarily stayed its PIP suits against [Plaintiffs]." (Dkt. 22 at 18 (emphasis omitted); *see also* Dkt. 22-6.)   Therefore, Defendant posits, "[Plaintiffs] cannot allege any actual or imminent injury arising from its potential obligations in [the] stayed cases." (Dkt. 22 at 18.)  This argument is unavailing.

Plaintiffs contend that Defendants were required to dismiss these claims with prejudice, not merely to stay them. (Dkt. 1 ¶ 39; Dkt. 27 at 10.)  Because Defendant has not dismissed the claims, Plaintiffs argue that Defendant has breached the settlement agreement. (Dkt. 1 ¶ 40; Dkt. 27 at 10.)  "A settlement agreement is a contract," *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987), and "the breach of a contract has long been held to be among the types of injuries that confer standing to sue." *E.A. Renfroe & Co. v. Moran*, 249 F. App'x 88, 91 (11th Cir. 2007); *see Rodriguez v. Universal Prop. & Cas. Ins. Co.*, No. 16-60442-CIV-COHN/SELTZER, 2016 WL 8678879, at *3 (S.D. Fla. Aug. 19, 2016) ("A breach of contract—even one that does not yield immediately cognizable money damages—qualifies as 'a harm that has traditionally been regarded as a basis for a lawsuit in English or American courts.'")

(quoting *Spokeo*, 578 U.S. at 341).  Thus, Plaintiffs have demonstrated an injury in fact under Count I.  *Cf. Montgomery Bank, N.A. v. Pike Creek Turf Farms, Inc.*, No. 2:16-cv-173-FtM-38CM, 2017 WL 1322143, at *4 n.2 (M.D. Fla. Apr. 7, 2017) ("[A]bsent a breach of the settlement agreement, [the plaintiff] would lack standing, and any action would not yet be ripe.")

Defendant asserts in its Reply that it has now dismissed "all of the PIP lawsuits subject to Count I," (Dkt. 55 at 2), and attaches a spreadsheet listing the referenced PIP suits, which indicates that they have all been dismissed without prejudice, (Dkt 55-1).[1]  Accordingly, Defendant separately argues that Count I is moot.  (Dkt. 55 at 1–2.)  While the court is not required to consider arguments raised for the first time in a party's reply brief, the court will briefly address this issue.  *See Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1309 (M.D. Fla. 2017) ("District [c]ourts . . . ordinarily do not consider arguments raised for the first time on reply.").

"A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Reich v. Occupational Safety & Health Rev. Comm'n*, 102 F.3d 1200, 1201 (11th Cir. 1997) (internal quotation marks omitted) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  A federal court lacks jurisdiction to decide moot cases because "a federal court determination of a

---

[1] Defendant requests that the court take judicial notice of these dismissals.  (Dkts. 54 & 62.)  Plaintiffs do not oppose these requests.  (*See id.*)  The court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Because Defendant has supplied the court with copies of the notices it filed dismissing the referenced cases, the court grants this request and takes judicial notice of these dismissals.

moot case would constitute an impermissible advisory opinion." *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004). "A case is not moot, though, only because a defendant voluntarily ceases the allegedly improper behavior." *Id.* "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. [I]f it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (ellipsis in original) (quotations omitted). Thus, "the standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is *stringent*: A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur*." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (quoting *Laidlaw*, 528 U.S. at 189). The Eleventh Circuit has identified three factors for determining whether a case has been rendered moot by voluntary cessation:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice[,] (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit[,] and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

*Id.* "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."

*Laidlaw*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

Defendant has not borne its "heavy and formidable burden of making it absolutely clear that [its] behavior will not recur." *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1357 (11th Cir. 2019) (internal quotation marks omitted). According to Plaintiffs, the challenged conduct was neither isolated nor unintentional—several hundred PIP lawsuits hang in the balance of the construction given to the parties' settlement agreement, none of which was dismissed until after Plaintiffs filed their Complaint. (*See* Dkt. 54-1.) Moreover, Defendant's dismissal of these claims was not precipitated by a change of heart, as Defendant appears to anticipate bringing these claims again pending a decision construing the Waiver Provision, given the language it included in each of its Notices of Voluntary Dismissal: "This dismissal is made without prejudice because the scope of the parties' settlement agreement . . . remains in dispute and is pending before a different court that will decide the lawfulness of any provision therein that State Farm claims may require this matter be dismissed with prejudice." (*See* Dkt. 54-2 *passim*.)

Nor has Defendant acknowledged liability by conceding that it was required to dismiss the lawsuits with prejudice. Where, as here, a plaintiff has exercised his "absolute right" under Florida Rule of Civil Procedure 1.420(a)(1) "to voluntarily dismiss his action . . . prior to a summary judgment hearing[] or before the case is sent to the jury," that "voluntary dismissal is 'without prejudice' in the sense that the defendant may not rely on the previous dismissal as a defense to any subsequent

- 17 -

lawsuit." *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1358 (11th Cir. 1999).  Each of the PIP suits at issue in this case was voluntarily dismissed without prejudice, and Defendant is not barred from resuming litigation in those cases in the future.  (*See, e.g.*, Dkt. 54-2 at 1 ("Pursuant to Rule 1.420(a)(1)(A) . . . Plaintiff . . . hereby gives notice of the voluntary dismissal without prejudice of the above-captioned action.").)  As noted above, Defendant appears poised to resume litigating each of these claims, depending upon how the court construes the scope and meaning of the Waiver Provision.  (*See, e.g.*, *id.* at 1 n.1.)  "In the absence of a sufficient showing by Defendant [that] the effects of the allegedly improper conduct have been completely and irrevocably rectified, and there is no reasonable expectation that the alleged violation will recur, there is a live controversy between the parties." *Gregory Haskin Chiropractic Clinics, Inc. v. Progressive Select Ins. Co.*, No. 18-63170-CIV-MARRA, 2019 WL 13169622, at *3 (S.D. Fla. Dec. 27, 2019) (citing *Reich*, 102 F.3d at 1201).  Thus, Count I has not been rendered moot, and Plaintiffs have standing to proceed under the count.

### 2.  Count II—Declaratory Relief

Defendant also argues that Plaintiffs have not alleged that they have suffered an injury in fact under Count II.  (Dkt. 22 at 17.)  Specifically, Defendant asserts that Plaintiffs are seeking "to challenge Patient Payment Obligations," which Defendant defines as sums that Plaintiffs' insureds "may owe for co[]payments, deductibles, and amounts exceeding policy benefits . . . amounts that have never been owed by [Plaintiffs] to [Defendant]."  (*Id.* at 4, 17 (emphasis omitted).)  Defendant submits that "[t]he alleged injury that [Plaintiffs] claim[] in Count II is a[] nonexistent, abstract,

hypothetical, speculative, and [] nebulous fiction." (*Id.* at 18.)  Plaintiffs respond that, given the "substantial ongoing controversy . . . regarding the scope of the Waiver Provision," Defendant has continued to seek payments that Plaintiffs maintain were waived in the settlement agreement.  (Dkt. 27 at 12.)  Plaintiffs allege in their Complaint that the Waiver Provision "requires [Defendant] to waive its Legal [accounts receivable] for services rendered to the . . . Plaintiffs' insureds prior to or on January 17, 2023," but that Defendant "seeks to interpret the Waiver Provision so that it only applies to amounts covered by PIP and MPC coverage."  (Dkt. 1 ¶¶ 47–48.) Plaintiffs seek a declaratory judgment so that it can resolve the "125 open demands which seek the payment of UM benefits," claiming that the "medical bills from [Defendant] for these claims exceed $1.3 million."  (Dkt. 27 at 12; *see also* Dkt. 1 ¶ 35.)

"Plaintiffs, as insurers, are entitled to seek declaratory judgment 'that [they are] not required to pay [defendant health clinic] the amount of the outstanding bills.'" *State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC*, No. 6:19-cv-1837-Orl-41LRH, 2020 WL 2630226, at *10 (M.D. Fla. May 22, 2020) (alterations in original) (quoting *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013)).  "The claims are outstanding, which means that they are owed; Plaintiffs may be required to pay these potentially unlawful claims, which is certainly a future injury." *Id.*  Defendant cites no authority to the contrary.  (*See* Dkt. 22 at 17–18.)  Accordingly, the court finds that Plaintiffs have standing to proceed under Count II.

## C. Abstention

Defendant asks the court to abstain from deciding the issues presented in this action pursuant to the doctrines developed by the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (Dkt. 22 at 18–23.)

While the Declaratory Judgment Act generally confers "broad discretion" on a federal court "in deciding whether to exercise jurisdiction over a case when there is a parallel state court case," a "federal court does not have such broad discretion . . . when a plaintiff seeks coercive relief . . . in addition to a declaration under the Declaratory Judgment Act." *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-cv-2419-VMC-CPT, 2021 WL 949611, at *7–8 (M.D. Fla. Mar. 12, 2021) (second ellipsis in original) (emphasis omitted) (quoting *Mega Life & Health Ins. Co. v. Tordion*, 399 F. Supp. 2d 1366, 1369 (S.D. Fla. 2005)). The Fifth Circuit has determined that cases that seek equitable relief in addition to declaratory relief "must be treated as . . . ordinary equity suit[s]" and thus fall outside the purview of *Brillhart*. *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973) (internal quotation marks omitted). As the Eleventh Circuit has noted, "[d]ecisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit." *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1160 n.1 (11th Cir. 2023) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)). Accordingly, because Plaintiffs are seeking equitable relief in

addition to declaratory relief, the court proceeds under the *Colorado River* doctrine. *See AFO Imaging*, 2021 WL 949611, at *8 ("Although circuits are split on this issue, federal district courts in Florida have found that the stricter *Colorado River* factors govern in such cases."). The court first conducts the threshold substantial-similarity analysis and then applies the *Colorado River* factors.

### 1. Substantially Similar

The first step is to determine "whether distinctions between the [Federal Action] and the [State Action] foreclose any application of the *Colorado River* principle as a threshold matter." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1329 (11th Cir. 2004). The "*Colorado River* analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues." *Id.* at 1330. "There is no clear test for deciding whether two cases contain substantially similar parties and issues. But . . . the balance in these situations begins tilted heavily in favor of the exercise of the court's jurisdiction." *Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012). "The crucial question is whether the similarity between the two cases is sufficient to justify the conclusion that the state[-]court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (quotation omitted); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court

litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."). "[I]f there is any substantial doubt about whether two cases are parallel[,] the court should not abstain." *Acosta*, 478 F. App'x at 622.

In the Federal Action, Plaintiffs seek specific performance of the settlement agreement, an order from the court dismissing Defendant's "PIP litigation that was pending as of January 17, 2023[,] with prejudice," (Dkt. 1 at 13), and a judgment construing the Waiver Provision, (*Id.* at 14). In the State Action, Defendant also seeks a judgment construing the Waiver Provision. (Dkt. 22-1 ¶ 80.) Indeed, as the court presiding over the State Action determined, that case "turns on differing interpretations of the [Waiver Provision]. The primary relief sought is a judicial declaration regarding the meaning, effect[,] and lawfulness of the Waiver Provision." (Dkt. 55-2 ¶ 2.) However, this Federal Action is not substantially similar to the State Action because Plaintiffs here also seek an order dismissing Defendant's PIP suit. (Dkt. 1 at 13.) Even if Defendant were to argue that Plaintiffs are required to raise this issue in the State Action as a compulsory counterclaim—which it does not, (*see* Dkts. 22 & 55)—courts in this district have rejected such arguments. *See NCH Healthcare Sys., Inc. v. PaxeraHealth Corp.*, No. 2:19-cv-632-FtM-38MRM, 2019 WL 6877180, at *2 (M.D. Fla. Dec. 17, 2019) ("Even if the [c]ourt accepts that these claims should be pleaded as compulsory counterclaims in the state action, that would not make the state and federal cases parallel."); *Duncanson v. Wine & Canvas Dev., LLC*, No. 6:14-cv-704-Orl-40KRS, 2015 WL 12844947, at *4 (M.D. Fla. June 24, 2015) ("[T]he *Colorado River* analysis looks only to those issues *actually* raised in the *state* case."), *report and*

*recommendation adopted by* 2015 WL 12844947 (M.D. Fla. Sept. 25, 2015).  "While there is some overlap of the issues, the [c]ourt is not convinced [that] it would have 'nothing further to do in resolving any substantive part of the case' if the [State Action] was decided."  *NCH Healthcare*, 2019 WL 6877180, at *3 (quoting *Ambrosia Coal*, 368 F.3d at 1329–30).

Moreover, the State Action involves claims brought by Defendant against State Farm Auto, Jennings, Gregory, and Lei, (Dkt. 22-1 at 11), whereas the Federal Action is between State Farm Auto, State Farm Fire, and Defendant, (Dkt. 1 at 1).  While the "parties do not have to be identical to be substantially similar," as  "a party could easily circumvent abstention with creative pleading," *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1286 (11th Cir. 2024), here the parties are not substantially similar.  As Plaintiffs note, a declaratory judgment under Florida law binds only the parties to the lawsuit, and thus, State Farm Fire would not be bound by any judgment rendered in the State Action. (Dkt. 27 at 15.)  *See* § 86.091, Fla. Stat. ("No declaration shall prejudice the rights of persons not parties to the proceedings.").

These actions are indisputably closely related, but given the foregoing, the court is left with a substantial doubt that the two cases are substantially similar for *Colorado River* purposes.  *See Acosta*, 478 F. App'x at 622 ("[T]he balance in these situations begins tilted heavily in favor of the exercise of the court's jurisdiction.  Thus, if there is any substantial doubt about whether two cases are parallel[,] the court should not abstain.").  Accordingly, the court declines to abstain from exercising jurisdiction in

this case. *See id.* ("Given our doubt about whether the state and federal proceedings are parallel, we err on the side in favor of the exercise of the court's jurisdiction . . . .").

## 2. *Colorado River* Factors

Even if the court found that the Federal Action and State Action were parallel, the *Colorado River* factors do not weigh in favor of abstention, and thus, the court's decision would not be altered.  "Abstention from the exercise of federal jurisdiction is the exception, not the rule.  The doctrine of abstention, under which a [d]istrict [c]ourt may decline to exercise . . . its jurisdiction, is an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it."  *Colo. River*, 424 U.S. at 813 (quotation omitted).  "In interpreting *Colorado River* and its progeny," the Eleventh Circuit has identified the following factors to be considered and applied:

> (1) [W]hether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.  Additionally, . . . the Supreme Court [has noted] that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*.

*Ambrosia Coal*, 368 F.3d at 1331 (citation and quotation omitted).  Courts should also consider "whether the concurrent cases involve a federal statute that evinces a policy favoring abstention."  *Id.* (citing *Colo. River*, 424 U.S. at 819).  In balancing these factors, no "one factor is necessarily determinative," the "factors must be considered

flexibly and pragmatically," and, again, "the abstention inquiry must be heavily weighted in favor of the exercise of jurisdiction." *Id.* at 1331–32 (quotation omitted).

The first two factors do not favor abstention. As to the first factor, the underlying action is "for declaratory relief relating to claims and services involving Jennings, Gregory, and Lei, and for damages against State Farm." (Dkt. 22-1 at 11.) Because this case is not "in rem, neither [the state court nor this] court has jurisdiction over property, and [thus,] the first *Colorado River* factor does not favor abstention." *Ambrosia Coal*, 368 F.3d at 1332. The inquiry involved under the second factor "focus[es] primarily on the physical proximity of the federal forum to the evidence and witnesses." *Id.* The primary evidence involved in this case is the settlement agreement. (Dkt. 1-4 at 1.) Any additional evidence—which may include, as the court presiding over the State Action noted, "evidence of the parties' intent, course of dealings, which party drafted the agreement, and representations made pre- and post-agreement, potentially including parol[] evidence," (Dkt. 55-2 at 1)—will likely come from witnesses near the federal forum, including the parties' lawyers who drafted the settlement agreement.[2]   Accordingly, and especially given that both the state and federal fora are in Florida, the "inconvenience of the federal forum is not so great that

---

[2] The court makes no determination as to the admissibility of any evidence the parties may ultimately seek to rely upon but pauses to note the potential evidentiary issues that may arise, especially to the extent the parties seek to rely upon parol evidence. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998) ("In Florida, evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. This rule applies when the parties intend that a written contract incorporate their final and complete agreement.") (internal quotation marks and citation omitted); *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1328 (M.D. Fla. 2012) ("The parol evidence rule provides that a written document intended by the parties to be the final embodiment of their agreement may not be contradicted, modified[,] or varied by parol evidence.").

[the second] factor points toward dismissal." *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 885 (11th Cir. 1990) (quotation omitted).

The third factor concerns the "consideration that was paramount in *Colorado River* itself—the danger of piecemeal litigation." *Moses H. Cone*, 460 U.S. at 19. While the State Action and Federal Action here both involve the force and effect of the settlement agreement, the Eleventh Circuit has cautioned that such overlap is not dispositive. Concluding that this factor did "not militate in favor of abstention" in *Ambrosia Coal*, the Eleventh Circuit explained:

> The district court rested its contrary conclusion on the assertion that inconsistent results or piecemeal litigation would likely result simply because both cases deal[t] with the validity of [an a]greement. On the district court's misguided reasoning, the third *Colorado River* factor would seemingly support abstention in every federal case that has a parallel state case. If this mistaken approach were in fact the rule, defendants could always escape federal courts simply by filing parallel state lawsuits. Thus, as it is properly understood, *Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious.

368 F.3d at 1333. There is no indication that this court's retaining jurisdiction over the Federal Action will result in abnormally excessive or deleterious litigation given the pendency of the State Action. Indeed, if the court adopts Plaintiffs' requested construction of the Waiver Provision, Defendant would be required to dismiss its pending PIP suits, thereby barring Defendant from litigating each suit separately. As such, this court's exercise of jurisdiction may actually reduce the risk of piecemeal

litigation.  In any event, there is no risk of the sort contemplated in *Colorado River*, which involved lawsuits against "some 1,000 water users."  *Id.* (quoting 424 U.S. at 805).  "Although the dual proceedings in this instance will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making, there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts." *Id.*

The fourth factor, "the order in which the fora obtained jurisdiction," *id.* at 1331, properly understood, looks not to "which complaint was filed first, but rather" at "how much progress has been made in the two actions," *Moses H. Cone*, 460 U.S. at 21.  Thus, while the federal action in *Colorado River* was filed first, abstention was nevertheless justified due to "the apparent absence of any proceedings in the [federal c]ourt, other than the filing of the complaint, prior to the motion to dismiss."  424 U.S. at 820.  This factor does not weigh in favor of abstention.  While the State Action also has a pending motion to dismiss, the parties in the Federal Action have proceeded to discovery; indeed, Magistrate Judge Embry Kidd recently held a hearing on Plaintiffs' Motions to Compel, (Dkts. 32–34), and ordered Defendant to respond to Plaintiffs' discovery requests by October 11, 2024, (Dkt. 60; *see also* Dkt. 27 at 18 (noting that, as of May 14, 2024, the parties had not engaged in discovery in the State Action)). Defendant "do[es] not succeed in showing that the relative progress of the cases tends to justify abstention."  *Ambrosia Coal*, 368 F.3d at 1333; *compare id.* (determining that this factor did not favor abstention where the action in Puerto Rico had been stayed

while the federal action had proceeded to discovery), *with Taveras*, 89 F.4th at 1287–88 (determining that this factor favored abstention where "[t]he federal case [wa]s at the initial pleading stage and no discovery ha[d] occurred, whereas the state case ha[d] included extensive discovery, motions to dismiss, [and] motions for summary judgment[] and [had] an upcoming trial"). Indeed, given that it was a federal court in this district, rather than the state court below, that oversaw the proceeding that gave rise to the settlement agreement at issue here, this factor weighs strongly against abstention. *Cf. Gold-Fogel v. Fogel*, 16 F.4th 790, 802 (11th Cir. 2021) (discerning no abuse of discretion when the district court stayed the federal action under *Colorado River* and explaining that the "state court presided over the marriage-dissolution proceedings that adopted the [a]greement at the heart of the dispute in both the state and federal proceedings").

The fifth factor requires the court to determine whether state or federal law applies. *Ambrosia Coal*, 368 F.3d at 1334. Plaintiffs concede that Florida law governs all claims at issue. (Dkt. 27 at 18.) However, "this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve," which is not the case here. *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1143 (11th Cir. 2013). These lawsuits call for interpretation of the settlement agreement, and Defendant has not argued that this court is relatively ill-equipped to handle that task. (*See* Dkts. 22 & 55); *NCH Healthcare*, 2019 WL 6877180, at *4 ("Here, [the plaintiff] brings forth claims in contract, tort, and one cause of action under Florida's Deceptive and Unfair Trade Practices Act. The [c]ourt is not persuaded that these

claims are too complex for this federal forum and thus does not give much weight to this factor."). Nor has Defendant argued that the application of Florida insurance law will involve "the kind of complex law that raises thorny and difficult state[-]law questions." *Jackson-Platts*, 727 F.3d at 1143; *see Am. Bankers*, 891 F.2d at 886 ("Only in rare circumstances will the presence of a state[-]law issue weigh in favor of dismissal. This action does not present such rare circumstances; it does not involve complex questions of state law that would best be resolved by a state court.") (citation and quotation omitted). Thus, the fifth factor does not weigh in favor of abstention. *Cf. Fogel*, 16 F.4th at 802 (determining that this factor weighed in favor of abstention because the case involved domestic relations, which the state court was "uniquely well-equipped to handle").

The sixth factor counsels in favor of or against abstention only "when one of the fora is inadequate to protect a party's rights." *Ambrosia Coal*, 368 F.3d at 1334; *accord Noonan S., Inc. v. Volusia County*, 841 F.2d 380, 383 (11th Cir. 1988) ("This factor will only weigh in favor [of] or against dismissal when one of the forums is *inadequate* to protect a party's rights."). Defendant addresses only the adequacy of the state court to protect the parties' rights, rather than this court's inadequacy to do the same. (Dkt. 22 at 22–23.) Because the court has no basis for determining that this federal forum is inadequate, the court concludes that this factor is neutral with regard to abstention. *See Ambrosia Coal*, 368 F.3d at 1334.

The court now arrives at the final prudential considerations involved in the *Colorado River* analysis—whether the Federal Action is "vexatious or reactive" and

"whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." *Ambrosia Coal*, 368 F.3d at 1331. With regard to the latter, no such federal statute is implicated in this case. *See Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1027 n.21 (M.D. Fla. 2019) ("The Eleventh Circuit has in some cases also considered . . . whether the concurrent cases involve a federal statute that evinces a policy favoring abstention. However, the instant case does not involve any federal statutes other than the Declaratory Judgment Act. Thus, this factor need not be considered in this analysis." (quotation omitted)).

With regard to the former, while the Federal Action was filed after the State Action, and after the order remanding the State Action, there is no indication that "Plaintiffs have filed this lawsuit after an unfavorable disposition of a claim on its merits" in the State Action, nor that they have filed "lawsuit after lawsuit against Defendant[] in numerous different forums." *Landini v. Circles of Care, Inc.*, No. 6:23-cv-273-WWB-LHP, 2023 WL 4134001, at *6 (M.D. Fla. June 22, 2023) (quoting *Clay v. AIG Aerospace Ins. Servs.*, 61 F. Supp. 3d 1255, 1265 (M.D. Fla. 2014)). Even if this factor weighed in favor of abstention, it would be alone in that regard. Thus, even if the cases were parallel, the court does not find that they present "the rare and exceptional circumstances found in *Colorado River*," *Jackson-Platts*, 727 F.3d at 1143, and thus, the court does not discern a basis to avoid its "virtually unflagging obligation . . . to exercise [its] jurisdiction," *Colo. River*, 424 U.S. at 817.

### D. Jurisdiction Over PIP Suits

Defendant argues that "Florida's county courts enjoy exclusive jurisdiction over PIP suits, including where a PIP claim contains a request for declaratory relief that could apply globally to all of a provider's PIP suits." (Dkt. 22 at 8.)  However, this action is not a PIP suit.  "The purpose of a PIP suit is to recover damages for breach of an insurance contract."  *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1072 (Fla. 2006).  Plaintiffs in this action are seeking to enforce the terms of the settlement agreement with Defendant, as well as to obtain a declaration as to the meaning and scope of the Waiver Provision.  (Dkt. 1 ¶ 11.) Thus, whether Florida's county courts "enjoy exclusive jurisdiction over PIP suits," (Dkt. 22 at 8), is beside the point.

### E. Judicial Estoppel

The final basis Defendant asserts for dismissal is that Plaintiffs are estopped from bringing Count II in this action because they have taken inconsistent legal positions in the Settled Action and the Removal Action. (Dkt. 22 at 24.)  "In diversity cases, the application of the doctrine of judicial estoppel is governed by state law." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 n.7 (11th Cir. 2018) (quotation omitted).  Under Florida law, "[j]udicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial . . . proceedings." *Fintak v. Fintak*, 120 So. 3d 177, 186 (Fla. Dist. Ct. App. 2013) (quoting *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001)). Florida's judicial-estoppel analysis involves five elements:

> (1) the party against whom estoppel is sought must have asserted a clearly inconsistent or conflicting position in a prior judicial proceeding[,] (2) the position assumed in the former proceeding must have been successfully maintained[,] (3) both proceedings must involve the same parties and same questions[,] (4) the party claiming estoppel must have relied on or been misled by the former position[,] and (5) the party seeking estoppel must have changed his or her position to his or her detriment based on the representation.

*Id.*

Defendant raises two arguments concerning judicial estoppel. Defendant first argues that Plaintiffs previously "stipulated . . . that the waiver provision d[oes] not prohibit [Defendant] from collecting Patient Payment Obligations from" its patients who were not insured by Plaintiffs, but Plaintiffs "now ignore[] [their] stipulations of record." (Dkt. 22 at 24 (emphasis omitted).) Plaintiffs' Complaint demonstrates that this argument is disputed. (*See, e.g.*, Dkt. 1 ¶ 11 ("This action also seeks a judgment declaring [that] the . . . Waiver Provision . . . requires [Defendant] to waive its legal accounts receivable . . . for all services rendered to . . . Plaintiffs' insureds on or before January 17, 2023."); *id.* ¶ 47 ("Plaintiffs contend [that] the clear and unambiguous language of the Waiver Provision requires [Defendant] to waive its Legal [accounts receivable] for services rendered to . . . Plaintiffs' *insureds* prior to or on January 17, 2023.").) Thus, Defendant, who provides no support for its claim that Plaintiffs now adopt a contrary position, fails to establish the first, threshold element. *See Fintak*, 120 So. 3d at 186.

Defendant's second argument is that Plaintiffs argued before the court in the Settled Action that Florida law "prohibits [Defendant] from waiving *en masse* Patient Payment Obligations including co[]payments and deductibles prior to resolution of the patients' bodily injury claims," but that their "Complaint seeks just that—demanding [that Defendant] commit insurance fraud, including against non-State Farm insurers by waiving thousands of Non-State Farm Insureds' [payment obligations]." (Dkt. 22 at 24.) This argument fails to establish the third element, at least. In the Settled Action, Plaintiffs argued that Defendant had "engag[ed] in a general business practice of waiving or failing to collect copayments . . . as an inducement for patients to appear for unnecessary treatment," which constitutes insurance fraud under Florida Law. *State Farm Mut. Auto. Ins. Co. v. Complete Care Ctrs., LLC*, No. 6:20-cv-1240-WWB-EJK (M.D. Fla.), Dkt. 1 ¶ 9. *See* § 817.234(7)(a), Fla. Stat. Here, however, Plaintiffs are requesting a declaration that Defendant is required to waive its accounts receivable for services rendered to Plaintiffs' insureds. (*See* Dkt. 1 ¶ 47.) The court in the Settled Action expressly declined to decide the legality of the settlement agreement. (*See* Dkt. 1-7.) The question of the legality of the Waiver Provision was never raised in the Settled Action, and thus, Plaintiffs are not judicially estopped from raising this issue here. *See Olmstead v. Emmanuel*, 783 So. 2d 1122, 1126 (Fla. Dist. Ct. App. 2001) (declining to apply judicial estoppel where the plaintiff's claim had not been addressed in the prior proceeding). The court does not find that Plaintiffs are engaging in the sort of self-contradiction that is required under this doctrine. *See Centrella v. Bank of N.Y. Mellon*, 336 So. 3d 1248, 1252–53 (Fla. Dist. Ct. App. 2022) ("Judicial estoppel

- 33 -

is imposed because intentional self-contradiction is being used as a means of obtaining an unfair advantage in a forum provided for suitors seeking justice." (cleaned up)).

## CONCLUSION

Accordingly:

1.    Defendant's request for the court to take judicial notice (Dkt. 54) is **GRANTED**.

2.    Defendant's Motion to Dismiss or to Abstain or Stay Pending Resolution of Related State Court Proceeding (Dkt. 22) is **DENIED**.

3.    In light of this Order, Defendant's Motion to Stay Discovery Pending Resolution of Motion to Dismiss (Dkt. 41) is **DENIED as moot**.

**ORDERED** in Orlando, Florida, on October 16, 2024.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record